## FORT WORTH & D. C. RY. CO. v. JENKINS.
### (No. 2122.)

(Court of Civil Appeals of Texas. Amarillo.
April 18, 1923. Rehearing Denied
May 23, 1923.)

**I. Continuance ⬅22—Granting of nonstatutory motion for continuance to secure testimony of absent witness is discretionary.**

A nonstatutory motion for continuance to secure the testimony of an absent witness is addressed largely to the discretion of the trial court.

**2. Continuance ⬅22—Overruling of nonstatutory motion for continuance to secure testimony of absent witness held not error.**

Overruling of motion for continuance to secure testimony of absent witness *held* not error where the witness was not under subpœna or interrogatories had not been propounded to take his depositions, and the motion did not state that appellant had used due diligence to procure the testimony, and the motion was not a statutory one, and no harm probably resulted from the absence of witness' testimony.

**3. Railroads ⬅412(1)—Fencing statute imposes absolute liability for cattle killed.**

Under Rev. St. art. 6603, a railroad company is absolutely liable for cattle killed by a train unless at the time the right of way at the place where they were killed was fenced so as to exclude cattle of ordinary propensities from entering thereon under ordinary circumstances.

**4. Railroads ⬅441(6)—Burden on company to show track was fenced.**

Plaintiff need only allege and prove that his cattle were killed by a train on defendant's right of way, whereupon the burden is then by statute cast upon defendant to show that its track at such place was fenced as provided by law.

**5. Railroads ⬅425—Defective cattle guards concurring cause of killing of cattle.**

Defects in cattle guards, whether the sole or concurring cause of the killing of cattle entering on the right of way through a break in the fence, *held* to make a case of liability against the railroad company.

**6. Railroads ⬅412(2)—Refusal to submit issue whether railway company discovered broken fence in time to repair it held not error.**

There is no error in refusing to submit an issue whether defendant railway company discovered that its fence, which was insufficient to turn cattle, was down in time to have repaired it before the entry of plaintiff's cattle killed by a train, since under Rev. St. art. 6603, the issue of negligence in the maintenance of the fence does not enter into the case.

**7. Railroads ⬅423—Owner of cattle not required to fence.**

Plaintiff, an owner of cattle entering on the right of way through a broken fence, and killed by defendant's train, was not required to fence his land so as to prevent his cattle from drifting therefrom, and his failure to fence was not contributory negligence defeating recovery.

**8. Trial ⬅350(5)—Cause of cattle leaving range and entering on railroad's right of way where killed, held not to bear on railroad's liability.**

In an action for value of cattle killed by defendant's train after having entered on defendant's right of way through a broken fence during a blinding snowstorm, refusal to submit issue whether snowstorm was independent cause of the cattle drifting from their range and onto defendant's tracks *held* not error, since the cause of the cattle leaving the range had nothing to do with defendant's liability.

**9. Trial ⬅351(5)—Submission of issue whether snowstorm was independent and proximate cause of cattle being killed on railroad tracks held sufficient.**

In action for value of cattle killed by defendant's train after having left their range in blinding snowstorm and entered on defendant's right of way through a broken fence, *held* that, if there was a necessity for the submission of the issue whether a snowstorm was the independent cause of the cattle drifting from the range and onto the tracks, the submission of the issue whether the snowstorm was the independent and proximate cause of the death of the cattle was sufficient.

Appeal from District Court, Dallam County; Reese Tatum, Judge.

Action by J. R. Jenkins against the Fort Worth & Denver City Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, and Tatum & Strong, of Dalhart, for appellant.
Bailey & Richards, of Dalhart, for appellee.

BOYCE, J. Appellee, Jenkins, recovered judgment in the trial court for $2,310, the value of 42 head of steers killed on the right of way of the appellant railway company by one of its trains. About 200 head of cattle belonging to plaintiff drifted during a snowstorm from their range, located several miles distant from where they were killed, and entered the public road paralleling and adjoining the railway company's right of way on the east and running at this place a little to the east of due south. The cattle drifting south followed this road for some distance and entered the right of way at a place where the right of way fence was down. They went down the right of way about 100 yards to a crossing, which was open into the road on the east, but was closed on the west side, except for entry through a gate. The cattle passed over this crossing, continuing down the right of way into a cut a short distance south of the crossing, where they

were run into by a train and 42 head of them killed. There were fences across the right of way at the crossing running from the cattle guards on each side of the crossing to the fences on the outer lines of the right of way, but the evidence shows that the cattle guards were so constructed that an animal could pass between the outside rails of the track and the winds of the guards, there being a space of about 3 feet at such place, with nothing to prevent an animal from going through. The tracks in the snow indicated that the cattle passed through the guards in this way. There is also some testimony to the effect that on the next morning after the cattle were killed the wires of the fence running from the south cattle guard to the right of way fence on the west side were all down except the top wire, and one witness testified that some of the cattle passed through this opening in going down the right of way.

The plaintiff pleaded that the cattle were killed on the right of way by defendant's train, and followed this allegation by a separate paragraph in which he alleged that the defendant was guilty of negligence in the killing of the cattle in that it permitted its right of way fence to get down, allowing ingress into its right of way, and hence "that the defendant did not at said time and place have its right of way fenced with a lawful fence, which was the direct and proximate cause of the death of said cattle." The defendant answered that it had this right of way fenced with a good and sufficient fence, but at the place where the cattle entered persons using the public road had, without its knowledge, taken down the fence for the purpose of going around a snowdrift in the road, and defendant did not have knowledge of such fact until after the cattle were killed; that the cattle were caused to drift from their range by an unexpected and unprecedented high wind and blinding snowstorm, which was the independent and proximate cause of their being killed, without negligence on defendant's part.

The court submitted issues as follows: (1) Whether the defendant's right of way at the place where plaintiff's cattle were alleged to have entered the same was fenced with a fence sufficient to turn cattle of ordinary disposition under ordinary circumstances; (2) whether the fence at such place was cut or torn down by some persons other than defendant's employees; (3) whether the defendant's employees, before the cattle were killed, knew that the right of way fence was down at such place. The jury answered the first issue in the negative, and the other two issues in the affirmative.

[1, 2] We do not think there was reversible error in the overruling of appellant's motion for continuance to secure the testimony of a Mexican section hand who, it was stated, would testify that he inspected this fence

two days before the cattle were killed and found it in good condition. The witness was not under subpœna, nor had interrogatories been propounded to take his depositions. The motion does not state that appellant had "used due diligence to procure the testimony," although the motion contains a statement of what efforts had been made to locate the witness who had left defendant's service before the filing of the suit. The motion was not a statutory motion and addressed itself largely to the discretion of the trial court. St. Louis & S. F. Ry. Co. v. Woolum, 84 Tex. 570, 19 S. W. 782; Hogan v. Railway Co., 88 Tex. 679, 32 S. W. 1035. Our consideration of the record convinces us that the trial court did not abuse its discretion in this matter, and further that no harm probably resulted from the absence of the testimony of this witness.

We find no error in the admission of the testimony of the witnesses Buck, Jones, and Fuson. These witnesses testified as to the condition of the right of way fence at a certain place described by them, and it is objected that the evidence does not identify these places with that where the cattle entered the right of way. We do not think the premise of the objection is sustained by the record; but, on the contrary, it is a reasonable inference from the evidence that the witnesses were describing the condition of the fence at the place where the cattle actually entered upon the right of way.

[3] The fourth proposition presents the contention that the defendant was entitled to a peremptory instruction because the evidence shows that the negligence alleged was not the proximate cause of the killing of the cattle. It is argued that, when the cattle went out on the crossing after first entry on the right of way, any causal connection between the alleged defect in the right of way fence where the cattle first entered the right of way and the further entry of the cattle upon that part of the right of way where they were killed ceased; that, if there was any liability against defendant shown, it was because of the defect in the cattle guards or fence from the cattle guard to the outside right of way fence, but plaintiff was not entitled to recover on such ground because it was not alleged. We are not prepared to say that there was no causal connection between the defect in the fence at the specific place alleged and the killing of the cattle. After the entry of the cattle at this place they were, from that time until killed, trapped on the defendant's right of way, True, they, or some of them, might possibly, if they had not gone upon the right of way at this place, have gone upon the crossing, and then on down the right of way, through the defective cattle guards. That is not conclusive, however, for it appears that those of the cattle that did not go through the fence where it was down went on down the

lane and did not enter upon the open crossing. The crossing itself was a trap. I. & G. N. Ry. Co. v. Williams (Tex. Civ. App.) 175 S. W. 486. If there had been no defects in the cattle guards, the cattle would have probably been on the right of way above the first crossing and exposed to the same danger from defendant's train as they were further on down the right of way. These considerations alone would, we think, justify us in overruling these assignments.

[4] But there was properly no question of negligence in this case, either in the erection or in the maintenance of the right of way fence. Under the law the railway company was absolutely liable for the cattle killed by its train unless at the time the right of way at the place where they were killed was fenced so as to exclude cattle of ordinary propensities from entry thereon under ordinary circumstances. R. C. S. art. 6603; Railway Co. v. Pruitt, 101 Tex. 548, 109 S. W. 925; C., R. I. & G. Ry. Co. v. Porter (Tex. Civ. App.) 166 S. W. 37; M., K. & T. Ry. Co. v. Tolbert, 100 Tex. 483, 101 S. W. 206; Ft. Worth & Denver City Railway Co. v. Polson (Tex. Civ. App.) 106 S. W. 429. The plaintiff need only have alleged and proven that the cattle were killed by a train on the defendant's right of way, whereupon the burden was then, by the statute, cast upon the railway company to show that its track at such place was fenced as provided by law. T. C. Ry. Co. v. Childress, 64 Tex. 346; Baker v. Schroeder (Tex. Civ. App.) 198 S. W. 394.

[5] The evidence as to the defects in the cattle guards at the crossings and as to the condition of the fences at such places was admitted without objection, and, whether as the sole or concurring cause of the killing of the cattle, makes a case of liability against the railway company unless the plaintiff's manner of pleading his case relieves it. The defective cattle guards are probably to be regarded as a cause concurring with the break in the fence through which the cattle first entered the right of way, in bringing about the death of the cattle at the exact place where they were killed. Instead of discharging the burden which was upon the railway company, the showing of these facts only more firmly established the fact that the railway company's right of way was not at this place fenced within the terms of the law. We do not think the defendant was entitled to the peremptory instruction.

[6] Under the fifth and sixth propositions it is contended that there was error in the refusal of the court to submit an issue as to whether the railway company discovered that the fence was down in time to have repaired it before the entry of the cattle on the right of way. As we have already shown, the issue of negligence in the maintenance of the fence does not enter into cases of this kind, and for this reason there was no error in the refusal to submit this issue which would be pertinent only on an issue of negligence in the matter of repairing the fence.

[7] The plaintiff was not required to fence his land so as to prevent his cattle from drifting therefrom, and we do not think there could in a case of this kind be a question of contributory negligence. Q., A. & P. Ry. Co. v. Price (Tex. Civ. App.) 192 S. W. 805. In any event there was neither pleading nor proof that would have sustained the submission of such an issue in this case.

[8, 9] The eighth proposition complains of the refusal of the court to submit an issue as to whether the snowstorm was the independent cause of the cattle drifting from their range and onto the defendant's tracks. We do not think that the cause of the cattle leaving their range had anything to do with defendant's liability. However, the court did submit, at appellant's request, an issue as to whether the snowstorm was the independent and proximate cause of the cattle being killed. If there was any necessity for the submission of any such issue at all, this was sufficient.

Affirmed.